## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

___

Channing B.,[1]

          Plaintiff,

v.

Leland Dudek,
*Acting Commissioner of Social Security,*

          Defendant.

Case No. 24-cv-1359 (KMM/SGE)

**REPORT AND RECOMMENDATION**

___

Pursuant to 42 U.S.C. § 405(g) Plaintiff Channing B. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for supplemental security income ("SSI") under Title XVI and disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. Both Plaintiff and Defendant have fully briefed their positions, and this matter is now ripe for review. (Pl.'s Br., Dkt. 10; Def.'s Br., Dkt. 13.) For the reasons below, the Court recommends Plaintiff's request for relief be **GRANTED**, and Defendant's request for relief be **DENIED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by his name only his first name and last initial are provided.

## I. BACKGROUND

On January 14, 2021, Plaintiff applied for disability insurance benefits under Title II and supplemental security income under Title XVI. (Tr. 27, 400-11.)[2] In both applications, Plaintiff alleged that he became disabled on June 5, 2018. (Tr. 27, 400, 407.) Plaintiff's claims were initially denied on April 20, 2021, and again on reconsideration on August 17, 2021. (Tr. 95-101, 102-108, 111-117, 118-124.) Plaintiff then requested an Administrative Law Judge ("ALJ") review the denial of his claims. (Tr. 166-167.) On December 15, 2022, the Administrative Law Judge ("ALJ") held a telephone hearing. (Tr. 46-92.) Plaintiff was represented by counsel at the hearing and testified on his own behalf. An independent Vocational Expert ("VE") Kimbery Eisenhuth, also testified at the hearing. (Tr. 46-92.) The ALJ issued his decision on March 14, 2023, finding that Plaintiff was not disabled under Section 216(i) and 223(d) of the Social Security Act and under Section 1614(a)(3)(A) of the Social Security Act. (Tr. 24-45.)

In reaching his decision, the ALJ followed the five-step sequential analysis process laid out in 20 C.F.R. § 404.1520(a) and § 416.920(a).[3] At step one the ALJ determined that

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, (Dkt. 7), by the abbreviation "Tr." Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner.

[3] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's residual functional capacity, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their

Plaintiff had not engaged in substantial gainful activity since June 5, 2018. (Tr. 30.) At step two, the ALJ found that Plaintiff had the following severe impairments: self-inflicted lacerations of left ulnar nerve/artery/flexor tendon, depressive disorder, anxiety disorder, personality disorder, and alcohol use disorder. (Tr. 30.) The ALJ also recognized that Plaintiff had non-severe impairment of obesity. (Tr. 30.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or is equal to the listed impairments. (Tr. 30.)

At step four, the ALJ made the following residual functional capacity ("RFC") determination:

> [C]laimant has the [RFC] to perform light work as defined in 20 C.F.R. 404.1576(b) and 416.967(b) except he can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can frequently balance and stoop but never kneel, crouch, or crawl. He can frequently perform handling and fingering but onl occasionally perform feeling with the non-dominant left hand and fingers. He can tolerate occasional left upper extremity vibration. He can have no exposure to dangerous moving machinery or unprotected heights. He is limited to unskilled, routine, repetitive tasks which could be completed in a timely fashion. He can tolerate occasional interactions with the general public, coworkers, and supervisors. He can tolerate occasional changes in work settings/work processes. He can tolerate routine work stress that would be encountered in a routine, repetitive, SVP 2 work environment.

(Tr. 32.) The ALJ also concluded that Plaintiff was unable to perform his past work as a short order cook and industrial cleaner based on his RFC determination. (Dkt. 36.)

---

prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i–v); 20 C.F.R. § 404.1520(a)(4)(i-v)

3

At step five, the ALJ concluded that there were other jobs that existed in significant numbers in the national economy that Plaintiff, given his age, education, work experience, and RFC, could perform. (Tr. 37) Relying on the testimony from the VE, the ALJ found that Plaintiff could perform the job requirements of "marker" of which there are 136,000 jobs nationally (DOT 209.587-034), "routing clerk" of which there are 118,000 jobs nationally (DOT 222.987-022), and "mail clerk" of which there are 11,000 jobs nationally (DOT 209.687-026). (Dkt. 37.) The ALJ concluded that because there were significant numbers of jobs in the national economy that Plaintiff can perform, he was not disabled. (Tr. 38.)

Plaintiff sought review of the ALJ's decision by the Appeals Council, which was denied on January 5, 2024. (Tr. 12-18.) Plaintiff filed this action on April 15, 2024. (Dkt. 1.) Thereafter, both parties submitted briefing (Dkts. 10, 13), and the Court took the matter under advisement on the written submissions.

## II.   STANDARD OF REVIEW

Following a final decision from the Commissioner, the claimant may elect to seek judicial review of the determination. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Under this review, the District Court is limited to a determination of "whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips*

4

*v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). The ALJ must build a logical bridge between the RFC and the evidence. Social Security Ruling ("SSR") 96-8p.

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th 2001)). Essentially, the ALJ's decision should not be disturbed just because the Court might have reached a different conclusion. *Kraus*, 988 F.3d at 1024. The ALJ's decision to deny benefits will not be reversed by the Court so long as it "falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)).

### III.   ANALYSIS

Plaintiff makes three specific arguments: (1) the ALJ's RFC is not supported by substantial evidence because he did not rely on "any medical opinion;" (2) the ALJ improperly drew his own inferences based on medical evidence to formulate the RFC; and (3) the ALJ should have developed the record further. Plaintiff therefore asks this Court to reverse the ALJ's decision and remand for further proceedings. Defendant counters that the RFC need not be supported by a specific medical opinion, and that regardless, the ALJ properly relied on medical evidence in formulating the RFC. Defendant also argues that an RFC determination is an "administration determination reserved to the Commissioner" and that any deficiency in the record is due to Plaintiff's failure to attend subsequent consultive

examinations or to submit additional evidence that the ALJ permitted to develop the record. Defendant asks the Court to affirm the ALJ's decision.

### A. ALJ Not Required to Rely on Medical Opinions

Plaintiff "contends that the RFC is not supported by substantial evidence because the ALJ did not base his determination on any medical opinion" which he argues "left no evidence on the issue." (Dkt. 10 at 10.) Notably, Plaintiff does not argue that the ALJ failed to evaluate the opinions consistent with the regulatory requirements.[4] Defendant counters that the ALJ was not required to rely on a medical opinion in formulating the RFC. (Dkt. 14 at 11-12.)

A claimant's RFC "is the most he can still do despite his limitations." 20 C.F.R. § 404.1545(a)(1); *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). The claimant bears the burden of establishing his RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The Eighth Circuit has held that "a 'claimant's [RFC] is a medical question.'" *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). But an RFC is ultimately an administrative assessment to

---

[4] Here, the ALJ evaluated opinions from Jennifer Novak, APRN, and the Minnesota State Medical Review Team. In December 2021, Ms. Novak opined that Plaintiff had "permanent limitations with the left forearm/hand/fingers, including 4 fingers lock and decreased grip strength." (Tr. 36 (citing Tr. 2507).) The ALJ found this opinion unpersuasive "because it does not provide specific functional limitations and is inconsistent with other evidence." (Tr. 36.) The ALJ also noted that a determination of whether a Plaintiff can work is an issue reserved to the Commissioner. (Tr. 36.) Next the ALJ addressed the Minnesota State Medical Review Team opinion that Plaintiff is "unable to maintain pace and persistence for a 40-hour work week." (Tr. 36 (citing Tr. 2633-36).) The ALJ found this opinion unpersuasive because it was "not well-supported," "inconsistent with other evidence," and applied "a different standard than used by Social Security." (Tr. 36.)

be determined by the ALJ. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016); *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018). In other words, "[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the work place." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007); *see also Lauer*, 245 F.3d at 704 ("Some medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'") (citations omitted).

But "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012). Rather, the RFC should be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Noerper v. Saul*, 964 F.3d 738, 744-45 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). The Court "review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [does] not require an ALJ to mechanically list and reject every possible limitation." *McCoy*, 648 F.3d at 615.

Although Plaintiff is correct that an RFC "must be supported by *some* medical evidence of the claimant's ability to function in the workplace," *Cox*, 495 F.3d at 619 (emphasis added), it need not be supported by a medical opinion. *Hensley*, 829 F.3d at 932 (affirming RFC with no supporting medical opinion evidence); *Myers*, 721 F.3d at 526-27

7

(same); *Perks*, 687 F.3d at 1092-93 (same). Thus, the ALJ did not error by not relying on a medical opinion.

### B. ALJ May Not Rely on Own Inferences

Next, the Court turns to Plaintiff's argument that the ALJ's RFC limitations "were borne of the inferences drawn by the ALJ's interpretation of the medical records." (Dkt. 10 at 16.) Defendant counters that "in considering the objective evidence in the context of the record as a whole, the ALJ was simply fulfilling his duty and not relying upon his 'lay opinion.'" (Dkt. 13 at 8.) "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); *see also Adamczyk v. Saul*, 817 F. App'x 287, 289 (8th Cir. 2020) (per curiam) ("[T]he ALJ cannot 'play doctor,' meaning that the ALJ cannot draw improper inferences from the record or substitute a doctor's opinion for his own."); *Combs*, 878 F.3d at 646 ("The ALJ 'may not simply draw his own inferences about plaintiff's functional ability from medical reports.'") (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)).

The Court concludes the ALJ relied on his own inferences drawn from an administrative record devoid of any evidence of *how* Plaintiff's impairments affect his ability to work. For example, in determining that Plaintiff could frequently perform handling and fingering, the ALJ explained that "there is no evidence" that Plaintiff followed up on the recommendation that he get a hand surgery evaluation and stated that this "casts doubt on the seriousness of his residual left hand problems." (Tr. 34.) However, this is precisely the point—there is no medical evidence such as a consultative examination or medical opinion, that assesses how Plaintiff's left-hand limitation affects his

8

functionality. And in regard to Plaintiff's mental limitations, state agency consultants repeatedly indicated that there was insufficient evidence to opine on Plaintiff's functionality. (Tr. 98-100, 105-07, 113-16, 120, 121-23.)

The ALJ's reliance on his own inferences from the medical records is further evidenced by the ALJ's rejection of all medical opinions in the record which discussed Plaintiff's impairments. *See Koch v. Kijakazi*, 4 F.4th 656, 667 (8th Cir. 2021) ("By relying on Dr. Rammos's note—which did not opine on Koch's pain or ability to work—instead of the doctors who did opine on Koch's pain and ability to work, the ALJ improperly drew his own inferences about Koch's RFC."); *Karin R. v. Saul*, No. 20-cv-1994 (TNL), 2022 WL 980342, at * 20 (D. Minn. Mar. 31, 2022) ("The Court concludes that the ALJ erred by making [] inferences regarding the significance certain notations in the record had to Plaintiff's ability to function in the workplace when evaluating the persuasiveness of the state agency medical consultants' prior administrative medical findings regarding her abilities to handle and finger with her right hand."); *Jodi L. W. v. Saul*, No. 20-cv-481 (PAM/TNL), 2020 WL 5798519, at *3 (D. Minn. Sept. 29, 2020) ("After rejecting all medical guidance from the medical providers, examining and consulting alike, the ALJ was deprived of nothing but his own lay opinion to interpret Plaintiff's complicated mental ailments.") .

Although there are reports and exam findings for both physical and mental impairments that the ALJ relied on (Tr. 34-35), "it is not clear *how* these impairments affect Plaintiff's ability to function" in the workplace. *Jennifer A. D. v. O'Malley*, No. 23-cv-0768 (JRT/JFD), 2024 WL 3446369, at *6 (D. Minn. June 25, 2024) (recommending reversal

9

based on ALJ's formulations of RFC based on his own inferences from medical evidence), *report and recommendation adopted*, No. 23-cv-768 (JRT/JFD), 2024 WL 3443882 (D. Minn. July 17, 2024); *Baker v. Saul*, No. 4:18-cv-1535 PLC, 2020 WL 870983 at *7 (E.D. Mo. Feb. 21, 2020) ("On the administrative record in this case, the only way the ALJ could have determined that Plaintiff was able to sit for six hours per day was to 'draw [her] own inferences from medical reports,' which an ALJ may not do under the Social Security Act"); *Karin R.*, 2022 WL 980342 at * 20 ("[I]t is not clear what relevance these findings have to the degree of functional impairment has in [plaintiff's] right hand without exercising medical judgment."). Thus, the ALJ erred by inferring Plaintiff's functional abilities from reports and exam findings. *Nevland*, 204 F.3d at 858.

Because the ALJ relied on his own interpretation of the medical record, he failed to fulfill his obligation to fully and fairly develop the record. *See Combs*, 878 F.3d at 647 ("By relying on his own interpretation of what 'no acute distress' and 'normal movement of all extremities' meant in terms of Combs' RFC, the ALJ failed to satisfy his duty to fully and fairly develop the record."); *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012) ("Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work."). Yet Defendant contends that Plaintiff's argument regarding the ALJ's failure to develop the record by ordering a consultative examination is undermined by Plaintiff's previous failure to appear at two consultative exams without providing a good reason and failure to submit additional evidence despite the opportunity to do so.

Under the Social Security regulations, an ALJ may find a claimant not disabled if they fail to appear at consultative examinations and do not provide a good reason for their failure to do so. 20 C.F.R. §§ 404.1518, 416.918. The ALJ expressly asked about Plaintiff's failure to appear at one of his two missed consultative examinations and suggested that he may order another. (Tr. 57-58.) But in the decision, the ALJ merely commented on Plaintiff's missed consultative exams, and did not indicate whether he placed any weight on Plaintiff's failure to appear. (Tr. 34.) Nor did the ALJ explain in the decision why he did not order another consultative exam after the hearing.

Defendant's argument essentially asks this Court to infer that the ALJ was relieved of his obligation to develop the record because Plaintiff had previously missed scheduled exams, despite the ALJ not placing any weight on the missed exams in his decision. *See Derfler v. Colvin*, No. 4:13-cv-1469-NAB, 2014 WL 3858255 (E.D. Mo. Aug. 6, 2014) ("The Commissioner contends that [plaintiff] was scheduled for a consultative examination, but she did not attend, thus inferring the ALJ was not obligated to schedule another one. The Commissioner's position is insufficient."). Although the regulations permit the Commissioner to find a claimant not disabled for refusing to cooperate, the ALJ did not do so here. And as noted above, the ALJ's rejection of medical guidance and failure to develop the record left him with nothing "but his own lay opinion" to interpret the impact Plaintiff's impairments on his degree of functionality. *Jodi L. W.,* 2020 WL 5798519, at *3; *Byes,* 687 F.3d at 915-16; *Combs*, 878 F.3d at 647.

11

In sum, the Court concludes that the ALJ erred by not developing the record and obtaining medical evidence of Plaintiff's functioning during the relevant time period. Consequently, the Court finds that the Commissioner's decision was not supported by substantial evidence. Further, the Court recommends that the Commissioner's decision be reversed, and the case remanded to the Social Security Administration with instructions for the ALJ to obtain medical evidence about *how* Plaintiff's mental and physical impairments affect his ability to work.

## IV.   RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein**, IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's request for relief (Dkt. 10) be **GRANTED**.

2. The Commissioner's request for relief (Dkt. 13) be **DENIED**.

3. This matter be **REMANDED** to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further development of Plaintiff's mental and physical functioning.

Dated: May 5, 2025               *s/Shannon G. Elkins*
                                 SHANNON G. ELKINS
                                 United States Magistrate Judge

## **NOTICE**

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).